UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

RAHUL SAKSENA,

                                                  Plaintiff,

                        -against-

CITY OF NEW YORK, POLICE OFFICER JOSUE
SOUFFRANCE, SHIELD 30012, POLICE OFFICER
JEFFREY AUGUSTIN, SHIELD 13952, POLICE
OFFICERS "JOHN DOE" 2-12,

                                      Defendants.

------------------------------------------------------------------------ x

**FIRST AMENDED
COMPLAINT**

Docket No. 14CV5129 (JBW) (LB)

Plaintiff Rahul Saksena by his attorney Martha Kashickey, of Stoll, Glickman & Bellina, LLP, for his complaint against defendants, alleges as follows:

<u>PRELIMINARY STATEMENT</u>

1.    This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of the laws and Constitution of the State of New York.

2.    The claim arises from a June 5, 2013 incident in which defendants, acting under color of state law, through perjury, assault and false imprisonment, violated Mr. Saksena's constitutional rights.

3.    Defendant City of New York has direct supervisory authority over defendant officers and failed to properly supervise, train, discipline and control these officers.

4.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

6.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

## VENUE

7.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.    The City of New York ("the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.   Police Officer Souffrance and Police Officer Augustin were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of agents, servants and employees of the City of New York.  On information and belief, at all times relevant, Officer Souffrance and Officer Augustin were involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting Plaintiff without probable cause.  On information and belief, at all times relevant, Officer Souffrance and Officer Augustin were under the command of the 79th precinct and are sued in their individual capacities.

11.   The police officer defendants whose names are unknown to Plaintiff, identified herein as "John Doe 2-12," at all times here relevant, were police officers of the NYPD, and as such were acting in the capacity of agents, servants and employees of the City of New York. On information and belief, at all times relevant hereto, "John Doe" defendants were involved in the decision to arrest Plaintiff without probable cause or failed to intervene in the actions of their fellow officers when they observed them arresting Plaintiff without probable cause.   On information and belief, at all times relevant, Defendants "John Doe" were under the command of a precinct of the NYPD and are sued in their individual capacities.

12.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

13.   Within 90 days of the events giving rise to these claims, Plaintiff filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have

3

elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

FACTUAL CHARGES

14.   On June 5, 2013, at approximately 10:00 p.m. on or near the intersection of Jefferson Avenue and Throop Avenue in Brooklyn, New York, Mr. Saksena was walking from the subway station to his home.

15.   He saw a young man at the above location, surrounded by two police officers.

16.   It appeared that the police officers believed that the man had urinated on the sidewalk, but the man was denying this.

17.   Mr. Saksena joined a small group of observers and watched the interaction for a period of about ten minutes, and the two officers paid him no attention.

18.   After approximately ten minutes, many more police officers arrived – approximately twelve.

19.   Mr. Saksena began filming the scene with his camera phone.

20.   Several other people near him also appeared to be filming the incident with their camera phones.

21.   One of the arriving officers approached Mr. Saksena and told him to step back.

22.   Mr. Saksena complied and stepped further away from the scene, but did not stop filming.

23.   One officer stated to Mr. Saksena, "You see the way this guy is acting, and *you* want to record *us*?"

24.   Several of the arriving officers then stood behind Mr. Saksena and the others filming, and it appeared from Mr. Saksena's peripheral vision that the officers had taken

4

out their own phones and were holding them up as if filming.

25.   Mr. Saksena stated to these officers, "All right, film us."

26.   A fellow bystander stated, "You guys are recording us recording?"

27.   Defendant Officer Souffrance exclaimed, "ABSOLUTELY!"

28.   Mr. Saksena could feel that Officer Souffrance was behind him very close to him. Mr. Saksena turned his head around to look at his name tag.

29.   As soon as Mr. Saksena turned his head around, Officer Souffrance grabbed him by the arm and violently threw him up against the iron gate of the building they were in front of. Mr. Saksena said, "What are you doing?" and Officer Souffrance shouted, "YOU GOT IN MY FACE!"

30.   Mr. Saksena replied, "YOU got in MY face!"

31.   Officer Souffrance said to Mr. Saksena, who has brown skin and is of South Asian descent, "LISTEN, WHITE BOY!"

32.   Approximately 6 officers rushed in to grab Mr. Saksena's arms and pull them behind his back.

33.   Mr. Saksena did not resist arrest. The officers handcuffed him.

34.   Mr. Saksena asked them, "What did I do?"

35.   Officer Souffrance shouted, "WELCOME TO BED-STUY!"

36.   While Mr. Saksena was carted off to a police vehicle, he repeatedly asked for an explanation as to what he did to justify his arrest.

37.   Inside the police vehicle, Mr. Saksena continued to ask Officer Souffrance and the other officer in the vehicle what he did wrong. Officer Souffrance replied, "You're a white boy in Bed-Stuy acting like a king."

38.   Officer Souffrance asked Mr. Saksena if he came to the neighborhood to buy drugs.

39.   Mr. Saksena kept on asking what he did wrong.

40.   Officer Souffrance stated that he would flush Mr. Saksena's face in the toilet if he didn't stop talking.

41.   Mr. Saksena replied, "I know my rights.  I'm a lawyer."

42.   Mr. Saksena suffered pain and bruises on his body.

43.   At no time did Mr. Saksena resist or threaten the officers in any way.

44.   At the precinct, Mr. Saksena was issued a summons for disorderly conduct.

45.   The summons was eventually dismissed, after Mr. Saksena made two appearances in court.

46.   Officer Souffrance made several false statements in the accusatory instrument.

47.   Officer Souffrance made these false statements to cover up his own misconduct and to maliciously charge Mr. Saksena with conduct he knew he did not commit.

48.   In addition to his physical injuries, Mr. Saksena suffered from emotional distress, anxiety and humiliation.  At the time of the incident, Mr. Saksena was an attorney who frequently interacts with the public, public officials and the media in his role as the policy director of a non-profit organization.

49.   Mr. Saksena missed work as a result of his two court appearances.

50.   At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate Plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other

during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against Plaintiff.

51.    During all of the events above described, defendants acted maliciously and with intent to injure Plaintiff.

<u>DAMAGES</u>

52.    As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

a.    Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of his person;

b.    Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.    Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.    Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.    Physical pain and suffering;

f.    Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.    Loss of liberty; and

h.    Attorney's and court fees.

<u>FIRST CAUSE OF ACTION</u><br>Falsely Arrested and Falsely Imprisoned<br>Plaintiff Under 42 U.S.C. § 1983<br>(Against Officer Defendants)

53.   The above paragraphs are here incorporated by reference.

54.   The officer defendants acted in concert to wrongfully and illegally detain, arrest and imprison Plaintiff in violation of his right to be free from unlawful search and seizure under the Fourth Amendment and free from a deprivation of his liberty without due process under the Fourteenth Amendment.

55.   The unjustifiable and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was forcibly carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

56.   All charges were dismissed.

57.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

58.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

59.   The above paragraphs are here incorporated by reference.

60.   The officer defendants acted in concert to wrongfully and illegally detain, arrest and imprison Plaintiff in violation of his right to be free from unlawful search and seizure

under the Fourth Amendment and free from a deprivation of his liberty without due process under the Fourteenth Amendment.

61.   The unjustifiable and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was forcibly carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

62.   All charges were dismissed.

63.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

64.   Defendants, their officers, agents, servants and employees, were responsible for Plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

65.   Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards Plaintiff.

66.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

<u>THIRD CAUSE OF ACTION</u>
False Arrest and False Imprisonment

9

(Against All Defendants)

67.   The above paragraphs are here incorporated by reference.

68.   Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

69.   Defendants intended to confine Plaintiff, Plaintiff was conscious of his confinement and did not consent to his confinement.

70.   All charges were dismissed.

71.   Defendants, their officers, agents, servants and employees, were responsible for Plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

72.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

### FOURTH CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants)

73.   The preceding paragraphs are here incorporated by reference.

74.   Defendants, acting with malice, initiated a prosecution against Plaintiff and caused him to be prosecuted.

75.   Defendants did not have probable cause to initiate proceeding.

76.   The criminal proceedings were terminated in Plaintiff's favor.

77.   Defendants have deprived Plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to Plaintiff under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

78.   Defendants, their officers, agents, servants and employees, were responsible for Plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

79.   As a result of the malicious prosecution implemented by defendants, Plaintiff was damaged.

FIFTH CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

80.   The above paragraphs are here incorporated by reference.

81.   At no time did Plaintiff resist arrest or present a threat to the officers or anyone else in the area.

82.   Plaintiff was slammed into a fence, causing pain and bruising.

83.   By using excessive force against Plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived Plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

84.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

85.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

SIXTH CAUSE OF ACTION
New York State Constitution Art. I § 12
Excessive Force
(Against All Defendants)

86.    The above paragraphs are here incorporated by reference.

87.    At no time did Plaintiff resist arrest or present a threat to the officers or anyone else in the area.

88.    Plaintiff was slammed into a fence, causing pain and bruising.

89.    By using excessive force against Plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived Plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

90.    Defendants, their officers, agents, servants and employees, were responsible for Plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

91.    The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by the New York State Constitution.

12

92. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

SEVENTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

93. The above paragraphs are here incorporated by reference.

94. Upon grabbing, shoving, handcuffing and arresting Plaintiff, defendants made Plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

95. Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

96. Defendants used excessive and unnecessary force with Plaintiff.

97. Defendants, their officers, agents, servants and employees, were responsible for Plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

98. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

EIGHTH CAUSE OF ACTION
First Amendment
42 U.S.C. § 1983
(Against All Defendants)

99. The above paragraphs are here incorporated by reference.

100. In preventing Plaintiff from exercising his right to film the police, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived Plaintiff of his rights, remedies, privileges, and immunities guaranteed to every

13

citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the First Amendment to the United States Constitution.

101. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

102. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

### NINTH CAUSE OF ACTION
### Negligent Hiring & Retention
### (Against City Defendant)

103. The above paragraphs are here incorporated by reference.

104. Upon information and belief, defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff.

105. Upon information and belief, defendant City, through the NYPD, owed a duty of care, to Plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to Plaintiff or those in a position similar to Plaintiff's as a result of this conduct.

106. Upon information and belief, defendant officers were incompetent and unfit for their positions. The City of New York was aware of these defendants' incompetence through multiple prior lawsuits against each officer, civilian complaints and criminal charges that were not prosecuted.

107. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

108. Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused Plaintiff's injuries.

109. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, Plaintiff incurred damages described above.

TENTH CAUSE OF ACTION<br>MUNICIPAL AND SUPERVISORY LIABILITY<br>(Against Defendant City)

110. The above paragraphs are here incorporated by reference.

**COMPLAINTS AGAINST NYPD FOR IMPROPER AND VIOLENT ARRESTS FOR FILMING OFFICERS ON DUTY ARE COMMON AND WIDESPREAD**

111. The NYPD Patrol Guide Section 212-49 states, "Members of the service will not interfere with the videotaping or the photographing of incidents in public places. Intentional interference such as blocking or obstructing cameras or harassing the photographer constitutes censorship."

112. Nonetheless, the City's continued failure to deter the police from arresting videographers and photographers has led to ever increasing numbers of lawsuits and complaints for repeat violations of people's right to record the police.

113. From a distance of about 30 feet away, Debra Goodman videotaped a police interaction with a homeless woman on 73rd Street and Broadway in Manhattan. A police officer approached her, held up his phone and appeared to film her. After telling him that she had the right to be filming, the officer asked Ms. Goodman for her identification.

When she stated she had done nothing wrong, he grabbed her arms, cuffed her and arrested her.[1]

    a.  In Debra Goodman's lawsuit against officers from the NYPD and the City, she cited the accounts of several other New Yorkers who had been falsely arrested for videotaping the police.

        i.  Shawn Thomas was videotaping the police at the Utica Avenue subway stop of the A train in Brooklyn on February 15, 2014.  Officer Rojas took out his own cell phone and shoved it in Mr. Thomas's face.  Officer Rojas then used excessive force to falsely arrest Mr. Thomas.

        ii.  Hadiyah Charles was videotaping police officers from the 79th precinct – the same precinct involved in Mr. Saksena's arrest – frisking several young men on June 5, 2012.  After Ms. Charles complied with several orders by officers to step further and further back, but never ceasing to film, Ms. Charles was handcuffed and falsely arrested.

        iii.  Christina Gonzalez and Matthew Swaye were falsely arrested on May 16, 2013 while they filmed police officers conducting a "vehicle safety check" on the 145th Street Bridge.  The officers threw Mr. Swaye to the ground; they took both Mr. Swaye's and Ms. Gonzalez's phones.  When they retrieved their property after going through the system,

---

[1] Colin Moynihan, "Suit Seeks to Establish Right to Record New York Police Officers," *New York Times* online edition (August 28, 2014, 7:23pm) http://www.nytimes.com/2014/07/16/nyregion/suit-seeks-to-establish-right-to-record-new-york-police-officers.html?_r=0

one of Ms. Gonzalez's memory cards had been removed, and Mr. Swaye's video had been deleted. Ms. Gonzalez's video was on a different memory card, however, so she posted and shared the video widely on the Internet.

iv. Ed Garcia Conde filmed the police giving his friend a summons for an open container of alcohol on March 13, 2013. After being told to put his camera phone away but refusing to do so, Sgt. Delgado of the NYPD stormed towards Mr. Conde, slammed him against a building, handcuffed him, and falsely arrested him; he was issued a summons for disorderly conduct.

114. Will Paybarah, whose only offense was running a red light on his bicycle, was arrested simply for taking out his camera and filming Officer Rich's approach, as shown in the video included with the *Gothamist* news article about the incident.[2]

115. Dick George was violently arrested for videotaping the police in Brooklyn, resulting in a torn meniscus and dismissed charges.[3] Mr. George swore under oath that Lt. Dennis Ferber told him, *"Now we're going to give you what you deserve for meddling in our business and when we finish with you, you can sue the city for $5 million and get rich, we don't care."*

## THE CITY OF NEW YORK AND NYPD FAIL TO DISCIPLINE OR EVEN SCRUTINIZE OFFICERS, UNITS AND PRECINCTS FOR CIVIL RIGHTS VIOLATIONS

---

[2] Ben Yakas, "Cyclist Arrested For Videotaping Cop During Red Light Stop," *Gothamist,* May 2, 2014 (August 28, 2014 at 7:24pm) http://gothamist.com/2014/05/02/cyclist_cop_video.php
[3] Reuters writers, "Man arrested for filming NYPD stop-and-frisk gets $125k settlement," *Reuters* (August 28, 2014 at 7:25pm) http://rt.com/usa/181672-nypd-recording-arrest-settlement/

116. Lawyers from the New York Civil Liberties Union have stated that they, along with other advocacy organizations, met with former Police Commissioner Ray Kelly on November 23, 2011 to discuss repeated instances of the police abusing observers and recorders of arrests related to the Occupy Wall Street protests.  In response to the meeting, Commissioner Kelly merely issued a "FINEST message," reminding officers of their obligations to cooperate with those attempting to photograph public demonstrations. According to the NYCLU, since the meeting neither Commissioner Kelly, nor Commissioner Bratton, nor any other NYPD official has initiated any further training, implemented any accountability measures, or followed up in any meaningful way after being made aware of the issue.

117. As the above non-exhaustive list of instances demonstrates, NYPD officers have continued to interfere with videographers and photographers with impunity.

118. Civil rights litigation is supposed to be a deterrent to repeated abuses of power by the police. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) (citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978)). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." Hudson v. Michigan, 547 U.S. 586, 598 (2006) (citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984)). "It is almost axiomatic that the threat of damages has a deterrent effect...surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980) (citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976)).

119. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens.  As a result, it is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.

120. Former Comptroller John Liu described the City of New York having a "see no evil, hear no evil' attitude," whose repeated calls for analyzing lawsuits were ignored. See FN5, below.

121. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[4]  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

122. In 2009, New York City saw a 46-percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared

---

[4] "The Failure of Civil Damages Claims to Modify Police Practices, and Recommendations for Change," New York City Bar Association Committee on New York City Affairs (August 28, 2014 at 7:36pm) http://www2.nycbar.org/Publications/reports/show_html_new.php?rid=32#Note3

to $80 million in 2008.[5] In the past ten years, the City of New York has paid nearly a billion dollars in settlement or judgment in lawsuits brought against the NYPD.[6]

123. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against Plaintiff.

124. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration--through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department--there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the

---

[5] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[6] Colleen Long and Jennifer Peltz, "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," *Associated Press*, October 15, 2010 (December 9, 2010) http://www.law.com/jsp/article.jsp?id=1202473432953

kind now charged." <u>See</u> <u>Colon v. City of New York, et al</u>, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

125. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiffs' civil rights, without fear of reprisal.

126. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

B.    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:     December 30, 2014
           Brooklyn, New York

TO:    Melanie Speight
       City of New York
       100 Church Street
       New York, NY  10007

       Police Officer Souffrance
       c/o Corporation Counsel
       City of New York
       100 Church Street
       New York, NY  10007

       Police Officer Augustin
       79th Precinct
       263 Tompkins Ave
       Brooklyn, NY 11216

Respectfully yours,

By: Martha Kashickey (MK6031)
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY  11217
T: (718) 852-3710
F: (718) 852-3586
mkashickey@stollglickman.com